[S. F. No. 12340. Department Two.—July 30, 1928.]

MARIE N. PARKER, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Appellants.

L. L. Cory for Appellants.

Fenston, Williams & Hansen and Christian Hoeppner for Respondent.

SHENK, J.—This is an appeal by the defendants from an order granting the plaintiff's motion for a new trial. The motion was made on the usual statutory grounds and was based on affidavits purporting to set forth newly discovered evidence. The order did not specify that the motion was granted on the ground of the insufficiency of the evidence to support the verdict.

The action was brought to recover damages for personal injuries sustained by the plaintiff as the result of a collision between the automobile in which she was riding as a guest and south-bound passenger train No. 84 of the defendant, known as the "Fresno Flyer," at the Ashland Avenue crossing near Muscatel, which is about five and one-half miles north of Fresno, in unincorporated territory. The Ashland Avenue crossing is a meeting point for the north-bound and south-bound trains, and at that point comprises a double track, consisting of a main line track (the easterly track). and a passing or switch track. The track beds are about five feet higher than the highway level. The accident occurred on a bright and clear Sunday, October 4, 1925, at about 2:30 o'clock in the afternoon, which was the scheduled meeting time of the two trains at or near Muscatel. The driver of the car was Mrs. Maud Merrill Miller,

at whose right the plaintiff was sitting. In the rear seat were Mrs. Miller's husband and Mrs. Johanna C. Merrill, her mother. The motor-car was proceeding from the north along the state highway on the westerly side of and parallel with the railroad right of way. The driver's intention was to cross into Ashland Avenue at the point mentioned. The plaintiff testifies that they proceeded southerly toward the Ashland Avenue crossing. She saw the north-bound passenger train No. 67 approaching the crossing from the south. By the time they had reached the crossing the rear end of the north-bound train had passed over the crossing, moving slowly. Mrs. Miller turned to the left off the highway and approached the railroad tracks. The plaintiff testified that she listened and looked in both directions to hear or see if a train was approaching on either track, heard nothing and saw nothing except the departing north-bound train. Mrs. Miller proceeded to cross the tracks, and almost as soon as the front wheels were over the first rail of the main line track the automobile was struck by the locomotive of south-bound train No. 84. Mrs. Merrill was killed and the other three occupants of the car received various injuries.

There are no natural obstructions to a clear view of a train approaching from either direction. The engineer of train No. 84 testified: ''We were passing the rear end of No. 67 when they started up onto the crossing, the first that I saw of them.'' Train No. 67 had been proceeding along the passing track at the rate of five or ten miles an hour. The crew of train No. 84, which had the right of way over the main line track, testified that the train (No. 84) was going at from 40 to 45 miles an hour. Members of the crew testified that the crossing whistle was blown at the Ashland Avenue whistling-post, which is 1,320 feet back from the crossing, and that the bell had been ringing continuously and was ringing at the time of the accident. The engineer testified that after the accident he shut off the bell ringer. Certain of the plaintiff's witnesses testified that no whistle or bell was heard. Three special issues were submitted to the jury: ''No. 1—Did the engineer upon approaching the crossing blow the whistle on the engine at or about the whistling-post?'' to which the answer was ''Yes.'' ''No. 2—Was the bell of the engine ringing immediately before and at the time of the accident? Answer:

Yes.'' ''No. 3—Was the train of the defendant Southern Pacific Company moving at an excessive rate of speed as it approached the crossing?'' to which nine of the jurymen answered ''No'' and three ''Yes.'' The jury found a general verdict for the defendants. The pleadings presented the issue of contributory negligence.

It is not claimed on this appeal that there was any error during the course of the trial or that the motion for a new trial was granted on any ground other than that of alleged newly discovered evidence. The defendants contest the granting of the motion for a new trial on the grounds: (1) That the accident happened because of contributory negligence on the part of the plaintiff, as determined by the verdict of the jury, and that the alleged newly discovered evidence had no bearing on the plea of contributory negligence; (2) that the affidavits upon which the motion for a new trial was granted were not sufficient in themselves to justify the order of the court, because the alleged newly discovered evidence was cumulative merely and was not such as to render a different result probable on a retrial; and (3) that a want of diligence is shown in not producing the evidence at the trial.

■ As to the first point, it is contended by the defendants that the general verdict determined the issues in their favor, one of these issues being the alleged contributory negligence of the plaintiff. The plaintiff replies, first, that the special issues submitted to the jury and the answers thereto show that the general verdict must have been predicated upon the absence of negligence on the part of the defendants and not on the contributory negligence of the plaintiff, and, secondly, that, assuming negligence on the part of the driver of the motor-car, the evidence does not establish negligence on the part of the plaintiff, a passenger in the car. As to the first reply of the plaintiff it is observed that the complaint charges negligence in general terms. ■ Section 486 of the Civil Code prescribes the duties of the operators of the train in ringing the bell and blowing the whistle on approaching a highway crossing. It is therein provided that the bell must be rung at a distance of at least 80 rods from the place where the railroad crosses the highway, and must be kept ringing until it crosses the same; or the steam-whistle must be sounded, except in cities,

at a like distance, and be kept sounding at intervals until it has crossed the highway. Failure to comply with this regulation is *prima facie* negligence on the part of the railroad company. (*Orcutt* v. *Pacific Coast Ry. Co.*, 85 Cal. 291 [24 Pac. 661].) But blowing the whistle "at or about the whistling-post," as the jury found was done in answer to question No. 1, and the ringing of the bell "immediately before and at the time of the accident," as the jury found was done in the answer to question No. 2, were not sufficient to constitute findings that the code section was fully complied with. In other words, the special findings are not comprehensive enough to amount to a conclusion on the part of the jury that the bell was ringing continually from a point 80 rods back from the crossing, or that the whistle was sounded at intervals for a like distance. While the special findings are, of course, not inconsistent with the general verdict herein rendered, on the other hand they would not necessarily be inconsistent with a general verdict for the plaintiff if, on the issue of the alleged negligence of the defendants, the jury had concluded, on sufficient evidence, that the defendants had otherwise acted in violation of the code section. Under this state of the record it cannot be said that the jury did not pass upon the issue of the contributory negligence of the plaintiff. Such being the case, and as the alleged newly discovered evidence had no pertinency to the issue of contributory negligence, the trial court committed prejudicial error in granting the motion for a new trial on the ground of the newly discovered evidence alone if the evidence on the issue of contributory negligence was sufficient to support the general verdict for the defendants. ■ Therefore, as we are to presume that the motion was not granted on the ground that the evidence was insufficient to support the verdict (*Biaggi* v. *Ramont*, 189 Cal. 675 [209 Pac. 892] ; sec. 657, Code Civ. Proc.), we then proceed to discover whether there is any substantial evidence of contributory negligence on the part of the plaintiff. In determining the responsibility of the plaintiff in the premises the situation in which she was placed by the conduct of the driver of the car must be adverted to. ■ It is the settled law of this state that an approach to a railroad crossing is in itself a warning of danger of which the traveler is bound to take notice. (See

*New York Oil Co.* v. *United Railroads,* 191 Cal. 101 [215 Pac. 72]; *Griffin* v. *San Pedro, L. A. & S. L. R. R. Co.,* 170 Cal. 772 [L. R. A. 1916A, 842, 151 Pac. 282]; *Chrissinger* v. *Southern Pacific Co.,* 169 Cal. 619 [149 Pac. 175].) When, as in the present case, the view of the railroad track from the parallel highway is unobstructed, it is the duty of the motorist to see what can be seen, and it is not due care to assume that trains are operated on the track only in one direction. (*Klussman* v. *Pacific Electric Ry. Co.,* 190 Cal. 441 [213 Pac. 38].) ■ The plaintiff in this case took a lively interest in her situation as her party approached the Ashland Avenue crossing. She testified that when they were nearing the crossing the motor-car in which she was riding was going slowly and could, she thought, be stopped instantly; that she looked up and down the track to ascertain whether a train was approaching on the second track; that she knew there might be a train coming on the main track, and she took every precaution to observe whether a train was approaching from the north or the south; and that she saw no train except the slowly moving train No. 67 as the rear coach thereof was from 125 to 150 feet north of the crossing. Notwithstanding her realization that a train might be approaching on the main track, and that the driver might, by starting up her car to cross that track, plunge the party, including the plaintiff, into the jaws of death, she made no remonstrance and uttered no warning to the driver of the danger in entering upon the perilous position on the track. It is impossible to lay down a general rule as a test of a passenger's responsibility under such circumstances. At times it might be highly improper to suggest any course of action on the part of the driver. At other times the circumstances might be such as to charge the passenger with some duty to suggest caution or otherwise endeavor to protect himself. (See *Parmenter* v. *McDougal,* 172 Cal. 306 [156 Pac. 460]; *Stewart* v. *San Joaquin L. & P. Corp.,* 44 Cal. App. 202 [186 Pac. 160].) Each case must rest upon its own set of facts, and the determination of those facts, as a general rule, is one for the jury. (*Stewart* v. *San Joaquin L. & P. Corp., supra.*) On the record before us it cannot be said that the jury might not find that the plaintiff was in some degree at fault in not apprising the driver of the impending danger.

■ The contention of the defendants to the effect that the alleged newly discovered evidence was wholly cumulative is well taken. It bore entirely on the question of the alleged negligenec of the defendants in the operation of the train No. 84, and particularly as to the giving or failure to give the required signals and as to the speed of that train. The affidavit of Ruth E. Gall set forth that on the day in question she was driving her car near the scene of the accident; that she saw quite a crowd of people assembled about the wrecked motor-car; that she stopped her car and joined the observers; that she knew, recognized, and spoke. to the plaintiff and was requested by the latter to telephone to the plaintiff's friends; that the affiant recognized among the bystanders and spoke to Miss Zena B. Bradley and her sister, Mrs. J. L. C. Smith, both of whom she theretofore had known; that in December, 1925, or January, 1926, the plaintiff called the affiant on the telephone and asked her what information she could give or what knowledge she had concerning the accident; that affiant told the plaintiff that she knew nothing of the facts of the accident or of the plaintiff's injuries; that she did not tell the plaintiff that she had seen Miss Bradley or Mrs. Smith at the scene of the accident; that several days after the trial, and on or about June 21, 1926, the plaintiff and her attorney called at the home of the affiant, at Fresno, and that then for the first time the affiant told the plaintiff of having met Miss Bradley and Mrs. Smith at the scene of the accident. Miss Bradley, Mr. and Mrs. Smith, and Sydney N. Jacobs stated in their affidavits that they were traveling in a southerly direction in an automobile on the highway north of Ashland Avenue and parallel with the railroad tracks; that when they were a short way north of the same the south-bound train overtook and passed them; that no whistle was blown nor bell rung as the train passed them, and that the train was traveling about sixty miles per hour. Much evidence was introduced by both parties on the question of whether the required signals were given and as to the speed of the train. There was the positive evidence of ten or more witnesses on behalf of the defendants that the signals were given. There was also evidence that the south-bound train was traveling at the rate of from 40 to 45 miles per hour. On behalf of the plaintiff there was evidence that the sig-

nals were not given, or, if given, were not given as required by the statute. A storekeeper near the crossing testified that he heard no whistle until the collision occurred, and that the south-bound train was going about 50 miles per hour. Witness Minoni was in the store at the time of the crash. He heard the bell and the whistle from the train on the passing track, but heard no whistle from the south-bound train until the accident occurred. The plaintiff testified that she did not hear the bell rung or the whistle blown on either train up to the time of the accident. Mrs. Miller, the driver of the car, testified that she heard the bell ringing on the train No. 67, but that she heard no signal, by bell or whistle, from the south-bound train. John M. Miller, her husband, testified that he heard no signal from either train.

From the evidence taken at the trial with reference to signals, and the alleged newly discovered evidence on the same subject, if it had gone to the jury, it is difficult to perceive how the verdict would have been different. But assuming this point to be a debatable question, we pass to the question which in itself may well be terminative of this appeal, namely, whether the alleged newly discovered evidence could not, with reasonable diligence, have been discovered and produced at the trial. The accident occurred on October 4, 1925. The plaintiff saw and spoke to her friend, Miss Gall, at the time of the accident. The plaintiff interviewed Miss Gall early in the year 1926 and asked her what she knew concerning the accident. With the reply that "she knew nothing of the facts of the accident" the plaintiff remained content and did not pursue the subject further. She did not, as diligence would prompt, question Miss Gall concerning those who were present at the time of the accident, or the circumstances attending the same. The trial was commenced on June 9, 1926, and was concluded three days later. It was through this same Miss Gall, with whom the plaintiff conversed at the time of the accident, and who was interviewed by the plaintiff in January, 1926, that the plaintiff claims she first discovered, on June 21, 1926, that the Smiths, Mr. Jacobs, and Miss Bradley were at or near the crossing at the time the accident occurred. No reason is advanced or excuse offered for not ascertaining from Miss Gall, prior to the trial, the fact that

these four persons might know something of the matters concerning which they are claimed to have had knowledge. The means of ascertaining the facts were readily available to the plaintiff through information possessed by her long prior to the trial.

Diligence is a relative term. It is incapable of exact definition, and depends upon the particular circumstances of each case. (*Heintz* v. *Cooper*, 104 Cal. 668 [38 Pac. 511]; 20 Cal. Jur. 87.) Conceding to the trial court a wide discretion in granting a new trial, nevertheless that discretion is a legal one, and the proper exercise thereof presents a question of law. On the record in this case it must be concluded (1) that the alleged newly discovered evidence related solely to the alleged negligence of the defendants, whereas there was sufficient evidence upon which the jury could find against the plaintiff and for the defendants on the issue of contributory negligence; (2) that the alleged newly discovered evidence was cumulative, and it cannot be said that a different result would have been accomplished as to the issue of the negligence of the defendants if the said evidence had been before the jury at the trial; and (3), assuming that the jury might have found for the plaintiff on the new evidence as to the alleged negligence of the defendants, the proper diligence was not shown in the discovery and production thereof.

The order is reversed.

Richards, J., and Langdon, J., concurred.