IN BANC.
This is an action brought by the administratrix of the estate of William L. Sheard, deceased, against the Oregon Electric Railway company, to recover damages for the death of said decedent on account of the alleged negligent killing of deceased in a collision between the automobile truck, owned and operated by deceased, with an electric train operated by defendant. Defendant appeals from judgment for the plaintiff.
AFFIRMED. *Page 417 
The pleadings are long and somewhat involved, and it is difficult to condense them so as to secure brevity, but we take the court's statement of them as being fairly correct.
The corporate character of the defendant; the fact of its operation of the railway at the point indicated; the fact that plaintiff's intestate met his death as a consequence of the collision, and the fact that plaintiff is his administratrix, are admitted. The facts constituting plaintiff's alleged cause of action are stated by the judge in his charge to the jury, and are as follows:
"She (alluding to plaintiff) says that Hood street between Lane and Abernethy streets and point south is paved with concrete paving; that the defendant's easterly track turns southwesterly off of Hood street at a point about 50 feet north of the north side of Abernethy street. That defendant's easterly track along Hood street is paved between the rails and about one foot on the ouside of both rails with stone blocks up to near the point where said easterly track turns westerly off of Hood street. That where the easterly track leaves Hood street and for a considerable distance southwesterly, the track rises at a sharp grade of about 3 1/2 per cent rise. That the stone block paving on defendant's easterly track from the point where it leaves the west side of Hood street northerly for more than 60 feet, the stone block paving is in a loose worn, unsafe and dangerous condition to automobile traffic on Hood street, and that during all of the times mentioned in the complaint there was a worn groove on the inside of the rails about three inches wide and three inches deep next to the rails sufficient to allow the wheel of an automobile to be caught therein. That at the point where the stone block paving between the rails of defendant's easterly track turns west off of Hood street, the stone block paving ends at right angles with said track on an angle with the west side *Page 418 
of Hood street, and on the easterly side of the end of the stone block pavement out in Hood street there is a triangular hole 16 inches wide and 5 inches deep on the inside of the easterly rail. That there is no decking, planking, pavement or other filling on top of the ties between the rails of defendant's easterly track in Hood street as the same turns off of the west side thereof and for more than several hundred feet above said track, and that the rails rest upon the ties and are five inches high, and the rails out in Hood street and along southerly up the track stand up unguarded and unprotected to the height of five inches above the ties.
"She alleges that on February 1, 1927, at the time William L. Sheard was killed, that the stone block paving and the easterly railroad track was in such condition that the grooves or trenches were three inches wide and three inches deep between the rails and next to the rails with the stone block paving rough and insecure and with said triangular hole at the end of the stone block paving between the rails out in Hood street and the same was at that time unprotected and had been for a long time prior thereto and that the street, railroad track and stone block paving was in an unsafe and dangerous condition to automobile traffic along Hood street.
"She says that the defendant negligently and carelessly on the 1st day of February, 1927, and prior thereto maintained and permitted said stone block paving to be and remain in said rough, dangerous and unsafe condition, and negligently and carelessly permitted and maintained said triangular hole at the end of the stone block paving between its track on the west side of Hood street, and negligently and carelessly permitted and maintained its railroad track where it leaves Hood street to be undecked, unplanked, unpaved, unfilled or at all guarded or protected, and negligently and carelessly permitted the rails to stand up five inches in Hood street unguarded and unprotected, and negligently and carelessly permitted and maintained its railroad track in Hood street to be and *Page 419 
remain in an unsafe and dangerous condition where persons operating automobiles or trucks would be likely to be injured, and that, she says, was the condition of the track at the time of Mr. Sheard's death.
"She says that where the track turns westerly off Hood street — at the point where the easterly track turns westerly off of Hood street, is in a thickly settled residential district in the city of Portland, Oregon, and that Hood street and Abernethy street are both legally dedicated, open and traveled streets, and were so for a long time prior to the first day of February, 1927.
"The complaint then says that on February 1, 1927, about 7:30 p.m of that day, it then being dark and raining and storming, Hood street being wet and covered with water, and the depressions along defendant's track were filled with water and the spaces between the rails of defendant's easterly track on Hood street where the same turns off of the west side of Hood street was filled with water and plaintiff's intestate, William L. Sheard, was then operating and driving his Ford truck with another person riding therein with him going southerly along the west side of Hood street, and when he attempted to cross the easterly track of defendant's railroad track at a point where the railroad track turns westerly off of Hood street, the right front wheel of the truck caught between the rails of the easterly track and fell into the triangular hole, whereby the truck was deflected from its course south and slid along said rail up the track toward Abernethy street and out of Hood street. That plaintiff's intestate, William L. Sheard, attempted to turn the truck back into Hood street but was unable to pull the front wheel across the easterly rail of defendant's track, it being five inches high from the ties upon which the wheel was resting, and in attempting to get the truck wheel over the rail and off of the track and into Hood street, the truck was moved up the track a distance of about 50 feet from the point where it left Hood street. That at the time while plaintiff's intestate, Mr. Sheard, and the other person *Page 420 
that was riding with him, were attempting to extricate the truck from the track, that the defendant's servants, agents and motorman then operating a train of cars belonging to defendant, then coming north and approaching Abernethy street and Hood street down the grade, negligently and carelessly operating the cars at a high and dangerous rate of speed at more than 30 miles per hour, without having the train under control or being able to stop it within any reasonable distance and being able to see the headlights of the truck which was facing defendant's train, the then approaching train for a distance of more than four hundred feet, negligently and carelessly and without regard for the life of plaintiff's intestate or for the lives of other persons on Hood and Abernethy streets, failed and neglected to stop or ring any bell or sound any gong or whistle, or give any other warning, and came down the track at a high and dangerous rate of speed, striking the truck in which plaintiff's intestate was then sitting or riding and which he was attempting to extricate from the track, pushing and knocking the same against a large power pole, completely wrecking the truck and causing injuries to plaintiff's intestate from which he immediately died.
"She says that at the time of the death of deceased he was of the age of 53 years, strong and sound in body and mind, in good health, and was earning and capable of earning the sum of $300 a month, and alleges that by reason of the negligence and carelessness of the defendant in wrongfully causing the death of the deceased, she has been damaged in the sum of $7,500.
 * * * * *
"Defendant has filed an answer in which it admits that it is an incorporation and admits that the deceased, William L. Sheard, came to his death as a result of a collision between his automobile and one of its trains and admits that he was a resident, at the time of his death, of Yamhill county, Oregon, and that he died intestate; it admits that it is a corporation and *Page 421 
owns and operates an electric railway for the carrying of passengers to the city of Portland and elsewhere. It admits that it maintained a railroad track running through the city of Portland, Oregon, in a southerly direction on Hood street and that the railroad leaves Hood street at or near its intersection with Abernethy street and running then in a southwesterly direction. Admits that the railroad is double tracked and that trains were operated over the double tracks. The defendant admits that Hood street from Lane street and south is paved and that defendant's track turns southwesterly off of Hood street at or near its intersection with Abernethy street and admits that its track as it leaves Hood street rises at a grade, and admits that people live in the vicinity of the place of the accident, and admits that Hood street and Abernethy street are dedicated streets and that portions of Hood street and Abernethy street are traveled; admits that on the evening of February 1, 1927, William L. Sheard was driving a Ford truck with another person going southerly along Hood street, and admits that William L. Sheard drove onto and attempted to follow the railroad tracks of the defendant where the same left Hood street, and admits that while in charge of the Ford truck and on the railway tracks and right of way of defendant and not on any traveled portion of any street or highway, a collision occurred between one of the defendant's trains and the Ford truck, as a result of which William L. Sheard died, and except as to those admissions the defendant denies all of the allegations of plaintiff's complaint.
"For a further separate answer and defense the defendant says that on February 1, 1927, it owned and operated a railroad running through the city of Portland, Oregon, and in a southerly direction on Hood street and leaving Hood street at or near the place of its intersection with Abernethy street. That the railroad consisted of double tracks and from the point where the same left Hood street its tracks were located on private right of way or property not used for travel. That the place where the tracks left Hood *Page 422 
street and the general condition thereof and the fact that the road and highway then being used by decedent did not follow the railroad tracks as they left Hood street, was apparent and known to decedent, or could have been known by the exercise of ordinary care and caution. That at the time of the accident and immediately prior thereto the decedent and R.L. Cinnamon, the decedent's agent for the purpose of operating said Ford, were under the influence of intoxicating liquor and were intoxicated while operating said Ford, and that as decedent drove his Ford truck southerly along Hood street he carelessly, negligently and recklessly undertook to and did drive along and upon the rails, ties and right of way of defendant's railroad after the same left Hood street until he reached the point where he could drive no further. That the rails, ties and right of way were not a street or highway nor was the same used for public travel, and while upon said rails, ties and right of way defendant with Ford truck, decedent carelessly, negligently and recklessly failed to look or listen for an approaching train, and negligently and carelessly failed to stop before going thereon, and carelessly and negligently failed to use care and caution for the purpose of warning the operator of the train that he was on the rails, ties and right of way. That at the time and place decedent was a trespasser upon the defendant's rails, ties and right of way, and was at a place not used for vehicular traffic and defendant's train approaching from the south and operated in a careful and prudent manner and without knowledge of decedent's presence upon said rails, ties and right of way, until it was too late to stop, collided with the Ford truck in which the decedent was then sitting, and as a result thereof decedent died. The defendant says that the death of decedent and whatever loss has been suffered by his estate were on account of the careless, negligence and recklessness of decedent as has just been read to you, and not on account of any fault or negligence on the part of the defendant.
"Plaintiff has filed a reply in which he denies all of the allegations of the answer and particularly denies *Page 423 
that Mr. Sheard drove onto or attempted to follow defendant's railroad track where it left Hood street, or otherwise than alleged in her complaint."
The evidence introduced by plaintiff tends to show that on the evening in question, which was on the 7th day of February, 1927, at about 7:30 p.m., the evening being dark, rainy and stormy, and the street being wet and slippery, the deceased was driving a Ford truck equipped with proper lights, along Hood street in the city of Portland on his way home near Dayton in Yamhill county. He was driving on the westerly side of Hood street along or upon the track of defendant's railway, which also extends along said street, which is paved for a distance of a block each way from the place of the accident with a concrete pavement with curbs except where the railroad tracks turn westerly out of Hood street. The railroad is double tracked. The easterly track, looking south, is paved between the rails and for one foot on each side of the track with some stone blocks of Belgian pavement. This stone block pavement ends at right angles to the railroad rails and is not parallel with the west side of Hood street. The stone block pavement lacks 15 inches of extending to the curb line of Hood street leaving 15 inches on the west line of Hood street, above which the most easterly track of defendant's railroad extends five inches above the ties upon which it rests. A triangular hole thus created was filled with water at the time of the accident. The conditions at the place of the accident had been the same for a long period before the accident, and witnesses testified to the fact that several automobiles had been stalled there, and that officers of the company had been informed of the conditions. This testimony was objected to by defendant and the objection overruled. The testimony on *Page 424 
this subject was limited by the court to the sole purpose of showing that the place was dangerous and that defendant had notice of such conditions.
Other testimony, principally by Cinnamon the companion of deceased, is substantially as follows:
"About 7:30 p.m., it being dark, Mr. Sheard drove on the west side of Hood street across the westerly track and across the westerly rail of the easterly track, when in crossing the easterly rail of the easterly track, the right front wheel of the truck fell into this hole and the car skidded out of the street up this track. Sheard attempted to turn the automobile to the left and pull the wheel over the rail of the track, but was unable to do so, and killed the engine. Sheard got out and attempted to crank the engine and was unable to start it. Sheard then got in the car and Mr. Cinnamon got out to crank it, and while so engaged, defendant's train came around the curve at a rate of speed of about 30 to 35 miles an hour. Cinnamon waved his hat and jumped just as the car struck the truck. Sheard had no time to get out of the truck or get out of the way of the train. There was no whistle or gong sounded from the train. Operators of the train had view of the truck, if they had been looking for about 400 feet. Mortorman Zimmerman first applied brakes about 150 feet from the truck."
The foregoing is a substantial resume of all the testimony given by plaintiff's witnesses. Much of it was contradicted by defendant's witnesses and testimony was introduced by defendant's witnesses tending to show that the witness Cinnamon was drunk and that deceased had been drinking liquor on the evening of the accident, but this testimony was in a measure contradicted and was left to the jury who viewed the premises and who must in effect have found against defendant on this matter so that need not be here considered.
AFFIRMED. REHEARING DENIED. *Page 425 
Unless there was error in the admission of some material part of the testimony above recited, it seems clear to us that there was sufficient evidence to be submitted to the jury as to defendant's liability. The jury, and not the court, was the tribunal to weigh the value of the testimony introduced by plaintiff and of that introduced by the defendant; to contradict it or to show contributory negligence. The jury has decided, and, unless evidence objected to was erroneously admitted, the matter ends so far as the court is concerned. As to defendant's objection to the admission of evidence, that several automobiles had stalled at the same place, we think that such testimony is admissible: Gynther v. Brown McCabe, 67 Or. 310, 319
(134 P. 1186) Coates v. Marion County, 96 Or. 334, 340 (189 P. 903).
It was not improper to admit evidence that the defendant was informed of the conditions at the point in controversy. It tended to preclude the assumption that the conditions had occurred so recently that defendant had no notice of them and consequently no time to correct them. It may well be that a single isolated instance of a prior accident in the same locality might not be evidence of the dangerous condition of the track and its surroundings. We are clear that where, as here, evidence of frequent, though not precisely identical, instances of the same character at the same spot, constitutes some evidence that the locality is unsafe. *Page 426 
The third and last assignment of error is to the following instructions given by the court:
"You are also instructed, ladies and gentlemen — I don't know whether I have covered that before or not — that if you find that the defendant or its motorman in operating its train saw the plaintiff's intestate on the track in the automobile, a sufficient distance away from the deceased, to have enabled it to have stopped its train, it was defendant's duty to stop its train, and the failure to do so under such circumstances would constitute negligence on the part of the defendant; if you find that was the case, then the plaintiff would be entitled to recover, if that was one of the proximate causes of decedent's death, unless you should find also that plaintiff's intestate, Mr. Sheard, negligently or voluntarily drove upon the track and placed himself in the position in which he was when he was struck or his truck was struck by the train."
The instruction, so far as it went, correctly stated the law, though not clearly, and was subject to some criticism, perhaps by both parties, but upon an exception being interposed by defendant's counsel, the court said:
"I thought I was giving the instruction you requested, Mr. Holland — I will give the instruction you requested — the trainmen were not required to anticipate that a vehicle would be traveling or standing at the place of the accident, but they had a right to assume that no vehicle would be at such a place or at that place, but if in the exercise of ordinary care they should have seen and observed it, then it was their duty if they did see it — or if they should have seen it in the exercise of ordinary care — then it was their duty to avoid striking it.
"That is what I tried to give and if the court said anything different in the former instruction, the jury will disregard it. *Page 427 
This was practically the substance of request XV of defendant and was sufficient to remove any obscurity in the instruction alluded to. The case may have been a very close one on the question of intoxication of the deceased, and upon contributory negligence in deceased not leaving his car sooner, but these matters were for the jury. If we take the testimony of Cinnamon, which the jury no doubt accepted, it was a question of a very few seconds between the time that the headlights of the train came into view until the accident occurred. Whether deceased was aware that the train was coming until it struck his truck, does not appear. He was confronted with a dilemma. If he left his car on the track, a train was liable to come along and strike it with the possibility of derailment and injury to passengers and occupants, and it was his duty to get the car off if such a course was reasonably practicable. Evidently there was little time to deliberate even if he was aware of the approach of the train. He was at the wheel engaged in an attempt to get his car off the track and as his companion said, when asked if deceased had any time to get out of the way after the train came in sight, "He didn't have any time, he didn't even have time to get out of the truck." In view of his testimony, and the conditions shown, it was for the jury to say whether his being in the truck was contributory negligence on his part.
AFFIRMED.
The judgment is affirmed.
BROWN and BELT, JJ., not sitting. *Page 428