[Civ. No. 4013.   Fourth Dist.   Apr. 5, 1950.]

DIANE THOMAS et al., Minors, etc., Appellants, v. ROBERT LEE IRVIN et al., Respondents.

Frank J. Perry and John F. O'Sullivan for Appellants.

Stammer & McKnight for Respondents.

MUSSELL, J.—Action for damages for death arising out of a collision of a truck with a railway engine.

Plaintiffs are the surviving widow and minor children of Charles Thomas, deceased. The decedent died from injuries received in a collision of a truck in which he was riding with an engine of defendant Southern Pacific Company. Defendant Robert Lee Irwin was the engineer operating the engine and defendant Ernest W. McCutchen was his fireman. The accident occurred at the Cherry Avenue crossing of the Southern Pacific Company's right of way in the city of Fresno. The truck in which the deceased was riding was a 1944 Ford motor tractor with semitrailer attached and was being driven by one Floyd E. Lumb. Lumb and Thomas were returning to

San Francisco after having delivered a load of automobiles in Los Angeles. At the time of the accident, Thomas was seated in the truck at the right of the driver and as a result of the collision, was thrown from the truck and under the wheels of the engine.

Trial was by jury and a verdict returned against the plaintiffs. A reversal is not sought on the ground of insufficiency of the evidence to support the verdict. The sole contention is that there were three erroneous instructions read to the jury and that the court erred in refusing to give one further instruction to the jury during its deliberations.

### FACTS

The accident occurred at approximately 5:18 a. m. on April 22, 1947, at the crossing named. Cherry Avenue runs generally north and south and the railroad tracks east and west. At the time of the collision decedent was traveling north on Cherry Avenue and the engine was traveling west. Both the engine and truck were traveling at about the same speed —15 to 20 miles per hour. Visibility was estimated at a mile. The crossing was protected by an automatic blinker system, an automatic wigwag, a reflectorized railroad warning sign and a railroad warning sign painted on the highway where it approached the crossing. The automatic blinker system was close to the crossing and was made up of eight red lights, which blinked on and off as the engine approached the crossing and the whole system was illuminated by flood lights. Both the automatic blinker system and the automatic wigwag commenced to operate when a train entered a circuit 1,021 feet from the crossing and both were operating at the time the engine crossed Cherry Avenue. The reflectorized railroad warning sign displayed the letters ''R. R.'' and was 260 feet south of the crossing. It was 2 feet in diameter and 7 feet high and was equipped with glass reflector beads and mirrors visible in the lights of an approaching vehicle during the dark hours. At the time of the accident, the headlight on the locomotive was burning, the bell on it was ringing and the whistle had been blown intermittently to a point 20 to 40 feet east of the crossing.

Both the deceased and Floyd Lumb were employees of Michael McGovern. Thomas was the regular driver of the truck and Lumb had been employed a day or two before the accident as an ''extra'' or ''helper'' to assist the deceased on this trip. Thomas had driven from San Francisco to Los

Angeles and back to within 5 miles of the crossing, at which point, at the direction and request of the deceased, Lumb had taken the wheel to give the deceased a rest. Thomas was the "boss" of the trip and Lumb was subject to his orders and direction. As the truck approached the crossing, Thomas was awake and smoking a cigarette. When the truck was about 250 feet south of the crossing, deceased instructed Lumb to "go slow" over the crossing because the tracks were rough and they might lose some chains which they were carrying in the trailer. Lumb slowed to about 15 miles per hour and drove onto the crossing. He failed to see the approaching locomotive, although there was nothing to obstruct his view, and the cab was struck on the right hand side. It was carried some distance beyond the crossing and decedent was thrown out before the engine was brought to a stop. Lumb testified that he drove the truck slowly up onto the railroad track without seeing or hearing the locomotive and the first thing he knew of its presence was that he thought there was an "explosion" as the locomotive struck the truck.

The principal complaint of plaintiffs is that the court erred in giving the following instruction:

"If you find from the evidence in this case that Charles Thomas and Floyd Lumb were both employees of the owner of the truck and that Charles Thomas was the superior employee, or boss, and had the power of control over the truck and over the driver, that fact must be considered by you with all other circumstances in the case in determining whether Charles Thomas was personally guilty of contributory negligence, and you may find that under such circumstances Charles Thomas was guilty of contributory negligence even though your decision would be different if Charles Thomas had simply been a guest riding in the vehicle without any right or power of control over either the driver or the vehicle."

Plaintiffs first claim that the instruction is an incorrect statement of the law in that it authorized the jury to find the decedent, Thomas, guilty of negligence simply and solely on the ground that he possessed the power to control the truck and driver.

Defendants pleaded contributory negligence on the part of the decedent and it was for the jury to determine from the evidence whether Thomas was under a duty to look, or listen, or warn the driver, or take some other precaution for his own safety. The jury was entitled to determine from the evidence

whether the decedent had the power to direct and control both the truck and the driver and to determine whether, in fact, the decedent did exercise such control and did direct the operation of the truck at the time of the accident.

In *Handley* v. *Lombardi*, 122 Cal.App. 22 [9 P.2d 867], where the plaintiff was a superior employee of the driver of the automobile in which the plaintiff was riding, the court said:

"The fact that plaintiff had the power of control over the driver was certainly a factor to be considered with all other circumstances in determining whether he himself was personally negligent; and the jury might well find that one who had the power to control the driver would be guilty of negligence where in the same circumstances one who had no such power would not."

The questioned instruction did not tell the jury that mere possession of a power of control over the truck by the deceased was sufficient to support a finding of his contributory negligence. It stated, in effect, that such power of control, if it existed, was to be considered with *all other circumstances in the case,* in determining the question of contributory negligence. It is argued that the instruction had the effect of telling the jury that the negligence of Lumb could be imputed to Thomas. However, the instruction does not state that the negligence of the driver could be imputed to the decedent and in the following instruction given, the jury was told that the negligence of the driver of a vehicle may not be imputed to a passenger in the vehicle.

Plaintiffs argue that the instruction is misleading in that it makes no mention of what circumstances must be shown in addition to the circumstances of control in order to make the decedent personally guilty of negligence, but the jury was fully instructed as to the circumstances required to establish contributory negligence and at plaintiffs' request, the jury was told that:

"The test of contributory negligence is: What would a reasonable person have done in decedent's position, seeing what he saw, knowing what he knew, in the light of the circumstances of his situation, and affected by the human propensities or elements which ordinarily enter into the formation of and influence the judgment?"

We are unable to find reversible error in the criticized instruction when considered in connection with the evidence before us.

■ Plaintiffs next complain that the trial court erred in refusing to give an instruction on imputed negligence when the jury returned to the courtroom and the foreman asked the following question:

"Was, in this case, the acts of Mr. Lumb subject to Mr. Thomas' supervision and any act that he committed?"

Plaintiffs' counsel offered to submit an instruction on imputed negligence but the court refused to give any additional instructions. Thereafter counsel for both parties agreed that all the instructions on negligence and contributory negligence should be and they were read to the jury, including an instruction stating the rule that the negligence of the driver could not be imputed to the passenger and the rules under which Charles Thomas could himself be guilty of contributory negligence. No additional instruction was prepared and presented to the court by plaintiffs. Furthermore, the question by the jury seems to us to have been a request for advice on a question of fact rather than law.

■ Plaintiffs also complain of the following instruction:

"Contributory negligence means negligence on the part of Charles Thomas which proximately contributed to the accident and to his death. In this connection, you are instructed that before the plaintiffs can recover in this action, it must appear that the death of Charles Thomas was caused by negligence on the part of the defendants unmixed with any negligence on his own part, and if negligence on the part of Charles Thomas contributed in any manner or in any degree, however slight, directly and proximately to his own death, then there can be no recovery on the part of these plaintiffs and your verdict must be for the defendants. Therefore, if you find from the evidence in this case that both the defendants and Charles Thomas were negligent and that the negligence of both of them proximately caused and contributed to the accident and to the death of Charles Thomas, then you are instructed that under the laws of California, which you must apply in this case, the plaintiffs are not entitled to recover and your verdict must be for the defendants."

Plaintiffs claim that this instruction placed upon them the burden of proving both the defendants' negligence and the decedent's freedom from contributory negligence. We find no merit in this contention.

The trial court instructed the jury as follows:

"Contributory negligence is an affirmative defense and

must be established by a prepondence of the evidence, in order to defeat plaintiffs' right to recover.''

And that:

''If the defendant Southern Pacific Company, a corporation, its agents and employees were negligent, and the negligence was a proximate cause of the death of the decedent Charles Thomas, then defendants are liable unless the defendants have satisfied you by the greater weight of all the evidence in the case that the decedent Charles Thomas contributed proximately by his own negligence to his own death.''

These were specific instructions upon the burden of proof and the instruction complained of does not purport to be an instruction upon that subject. The burden of proving defendants' negligence is upon the plaintiff and while the burden of proving contributory negligence is ordinarily on the defendants, if contributory negligence appears from plaintiffs' own case, it is not necessary for the defendants to prove it. (*Rush* v. *Lagomarsino,* 196 Cal. 308, 318 [237 P. 1066]; *Quill* v. *Southern Pacific Co.,* 140 Cal. 268 [73 P. 991]; *Oliphant* v. *Brown,* 7 Cal.App.2d 584, 585, 586 [46 P.2d 790].)

█ Finally, plaintiffs complain of the following instruction:

''Although it is true that the negligence of the driver of a vehicle may not be imputed to a passenger who is riding in the vehicle, still the passenger under such circumstances is under a legal duty to use ordinary care for his own safety. Such a passenger cannot rely completely and alone upon the driver of the vehicle when approaching a railroad crossing which he knows is there, and if he is in a position to do so, and if ordinary care requires it, he must look and listen in the same manner as the operator of the vehicle for the purpose of ascertaining the approach of a train or locomotive engine. Likewise, if such passenger is aware that the driver is not looking for trains, or is operating the vehicle in a negligent manner, or is violating the law, or is driving into danger, or that a train or engine is approaching at a place which constitutes a danger, it is incumbent upon the passenger to take such steps to protect himself and the vehicle in which he is riding as a man of ordinary prudence would take under those same circumstances. In other words, such a passenger cannot shut his eyes to danger in blind reliance upon the driver of the vehicle.

''Therefore, a passenger in a vehicle approaching a railroad

track under the circumstances above set forth who fails to look or listen for approaching trains or to protest against the negligent operation of the vehicle by the driver or to warn the driver of the approach of a train or engine when ordinary care requires such action or such protest or such warning is guilty of negligence, and if such negligence proximately contributes to his death, it bars any recovery on account thereof.''

The part of this instruction to which the appellants object is that in which the jury was told ''It is incumbent upon the passenger to take such steps to protect himself *and the vehicle in which he is riding* as a man of ordinary prudence would take under those same circumstances.''

Plaintiffs contend that the passenger's only duty is to exercise ordinary care for his own safety and that he is not under any duty to exercise ordinary care for the vehicle. However, in the instant case, it is conceded that the decedent was under the duty to exercise ordinary care for his own safety and the instruction did not place upon him the burden of doing any act for the protection of the vehicle that he would not have been required to do for his own protection. In either case, his only obligation was to exercise ordinary care to avoid the accident.

A review of the evidence and consideration of the entire case leads us to the conclusion that the instructions complained of did not result in any miscarriage of justice and under such circumstances, do not call for a reversal of the judgment. (Code Civ. Proc., § 475; Cal. Const., art. VI, § 4½; *Caminetti* v. *Imperial Mut. L. Ins. Co.*, 59 Cal.App.2d 476, 488 [139 P.2d 681].)

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied April 28, 1950, and appellants' petition for a hearing by the Supreme Court was denied June 1, 1950. Carter, J., voted for a hearing.