Argued October 2, 1964, reversed and remanded February 10,
petition for rehearing denied March 9, 1965

# LINDSEY *v.* SOUTHERN PACIFIC CO. ET AL

399 P. 2d 152

12

*Philip A. Levin,* Portland, argued the cause for appellant. On the brief were Pozzi, Levin & Wilson, Portland.

*Kaye C. Robinette,* Portland, argued the cause for respondents. With him on the brief were Koerner, Young, McColloch & Dezendorf and John Gordon Gearin, Portland.

Before MCALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

DENECKE, J.

In this action for wrongful death resulting from a railroad crossing collision, the trial court entered a judgment of involuntary nonsuit and plaintiff appeals.

There was evidence from which the jury could reasonably have found the following: Plaintiff's intestate was a passenger in a car which stalled on the crossing with its front wheels overlapping one rail. At this time the train was about eight or nine blocks away. The driver began working with the gearshift lever; the decedent told the driver "to do something with this automobile"; immediately after that the decedent attempted to open the door; being unfamiliar with the latch it took her "a few seconds" to open the door. At the time of impact she had opened the door and had one foot on the ground; the train struck the front of the car, spinning it around and knocking plaintiff under the wheels of the train. The track at this point was straight; it was afternoon and visibility was ex-

cellent. The stalled car was visible to the train engineer for eight or nine blocks. The train was accelerating on full throttle until a split second before the impact; the train was traveling at about 35 miles an hour, the speed limit; the train could have been stopped in about 300 feet; the brakes were not applied until a split second before the impact. The engineer testified that he did not "decide" that the car was not going to move and the occupants were not going to be able to get off the track until he was 50 to 100 feet from the crossing.

The grounds asserted for the nonsuit were contributory negligence on the part of plaintiff and no negligence on the part of defendants. The trial court was reluctant to grant a nonsuit but believed it was required to do so under our decisions in *Emmons v. Southern Pac. Co.*, 97 Or 263, 191 P 333 (1920), and *Marks, Exec. v. Southern Pac. Co.*, 211 Or 539, 316 P2d 523 (1957). The trial court appears to have based its decision upon the ground that the railroad was not negligent.

Some of the statements in those cases appear to support the trial court's decision; however, they are made in the context of deciding the issue of last clear chance and not the issue of the railroad's negligence. In *Emmons* the court held, "there was no error in denying the motion for a directed verdict." (97 Or at 295) This necessarily is a holding that the railroad's negligence was a question of fact. It is also a holding, as the court expressly stated, that the applicability of the last clear chance doctrine was a question of fact.

In *Marks* the plaintiff's decedent drove his car upon the tracks where it stalled. The court affirmed a judgment for the railroad made notwithstanding a ver-

14

dict for plaintiff. The grounds were that plaintiff was contributorily negligent as a matter of law and that: "The evidence fails to show that the defendants had a last clear chance of avoiding Marks' injury." (211 Or at 549) Nothing was said about the railroad's negligence.

■ Decisions that the railroad did or did not have the last clear chance are not decisions that the railroad was or was not negligent. Last clear chance is a contention made to avoid the consequences of the rule that plaintiff's contributory negligence will bar his recovery.[①] Last clear chance becomes an issue only after a finding that the plaintiff was contributorily negligent. The usual sequence of issues is: (1) Was the defendant negligent? If not, the inquiry is terminated in defendant's favor. If he was negligent, the next issue is: (2) Was the plaintiff negligent? If not, the inquiry is terminated in plaintiff's favor. If he was negligent, the final issue is: (3) Did defendant have the last clear chance? A decision that the defendant did or did not have the last clear chance presupposes that the defendant was negligent.

■■ A decision on last clear chance is not a decision on the issue of the railroad's negligence for the further reason that in Oregon last clear chance is a doctrine of "discovered peril." This court has repeatedly held that a defendant cannot be held to have the last clear chance unless he *knows* of plaintiff's peril; it is not sufficient if only he *should have known* of plaintiff's peril. *Scholl v. Belcher,* 63 Or 310, 324, 127 P 968, 973 (1912). On the other hand, the test of a defendant's negligence, a railroad or otherwise, is either

① It is not necessary to discuss Rew v. Dorn, 160 Or 368, 85 P2d 1031 (1938); see 19 Or L Rev 178 (1940).

it "knew" or, as a reasonably prudent person, it "should have known." A decision that a jury could not reasonably find that the railroad knew of plaintiff's peril is quite different from a holding that a jury could not reasonably find that the railroad should have known of plaintiff's peril.

■ Plaintiff in this case does not rely upon last clear chance. It is not essential that she do so as decedent was not contributorily negligent as a matter of law. The statement of the facts is sufficient authority for our conclusion that this issue is for the jury.

■ Under general tort principles the operators of a railroad train approaching a crossing have a duty to exercise reasonable diligence to avoid a collision. *Fish v. Southern Pacific Co.*, 173 Or 294, 321, 143 P2d 917, 145 P2d 991 (1944). The railroad has a right of precedence at a crossing. However, "[n]either the railroad nor motorist has an exclusive right to the use of the highway but must use it with due regard to the rights of the other." *Finn v. Spokane, P. & S. Ry. Co.*, 189 Or 126, 132, 214 P2d 354, 218 P2d 720 (1950).

The jury could have found that the engineer saw, or should have seen, for a distance of eight or nine blocks, the vehicle stopped on the track and further found that a reasonable and prudent train engineer would have put his train under such control that if the car remained on the track he could stop the train in order to avoid a collision. In *Sheard v. Oregon Elec. Ry. Co.*, 131 Or 415, 426, 282 P 542 (1929), the jury was authorized to make such a finding by an instruction, approved as to substance. The instruction was:

"* * * that if you find that the defendant or its motorman in operating its train saw the plaintiff's intestate on the track in the automobile, a sufficient distance away from the deceased, to have

enabled it to have stopped its train, it was defendant's duty to stop its train, and the failure to do so under such circumstances would constitute negligence on the part of the defendant; * * *."

■ *Broad v. Pennsylvania R. R. Co.,* 357 Pa 478, 55 A2d 359 (1947); *Pollard v. Oregon Short Line R. Co.,* 92 Mont 119, 11 P2d 271 (1932); and *Herrera v. Southern Pacific Company,* 155 Cal App2d 781, 318 P2d 784 (1957), held under similar circumstances, that the railroad's negligence was for the jury.

The trial court erred in granting the motion for nonsuit.

Reversed and remanded.

ROSSMAN, J., did not participate in the decision of this case.

PERRY, J., dissenting.

I am unable to agree with the majority. The majority opinion simply states that the evidence in this case fails to show that the plaintiff was guilty of contributory negligence as a matter of law. Since the opinion states no legal reason for this conclusion, I presume it is because the decedent was not operating the motor vehicle at the time it was struck by defendant's engine. The plaintiff's evidence in this case is in my mind conclusive that the deceased in fact was negligent as a matter of law. Mr. Roy Beem, a witness for plaintiff, testified as follows:

"Q * * * Now, as you approached the intersection of the railroad crossing there at Garden Valley Road, did you bring your car to a stop?
"A I did.

"Q For what reason please?
"A The lights started flashing, signaling the approaching train.

"Q I want you to be sure, Mr. Beem, and speak up loudly so that all of the jurors hear you because it's kind of difficult sometimes. Now, how far from the crossing were you when the signals started going?

"A I would say I was maybe 50 or 100 feet from it.

"Q All right. And when you stopped your car did any other cars come upon the crossing?

"A There was a car following me in the other lane, close, and they pulled on past me and stopped on the tracks.

"Q Now, this was the automobile that was involved in the collision?

"A Right.

"Q Now, about how long after you had come to a stop was it that the other car came up to the point on the tracks?

"A Well, just a second or two because they were right—just running right along just behind me."

The testimony of the driver of the car, a Miss Brusseau, also a witness for plaintiff, testified as follows:

"Q Now, just start back a little ways from this crossing and tell me in your own words how the accident happened. Just describe how this came about?

"A Oh, I was driving down the road and we came to the tracks and I slowed up and I stopped to put the car into first because my boy-friend at that time—well, he always put the car in first when he went over bumps, and that was because the car was real low and it would scrape the bottom, and a car had went across the tracks from the other way, coming towards us, just about a second before we had gotten there. I didn't see the light or hear anything or see anything until after I had stopped on the track.

"Q  I see. Now, as you approached the crossing, did you actually come to a stop before you got onto the track?

"A  No, I think I stopped just about where the train hit me, I think, because I didn't see any light or anything and I just stopped where the track came.  I think I stopped right there.

"Q  Do you recall that there were flashing lights on either side of that crossing?

"A  No, I don't.

"Q  You don't recall that?

"A  No.

"Q  You don't recall any kind of warning device there at the crossing?

"A  No.

"Q  Were you familiar with this crossing?

"A  Yes.

"Q  And do you know whether Angela was familiar with the crossing?

"A  *Yes, because she would go by that way to get to work every day.*  (Italics mine)

"Q  *So she knew it well; both of you did?*  (Italics mine)

"A  *Yes.*  (Italics mine)

"*  *  *  *  *

"Q  Did she say anything to you that would indicate she knew the train was coming?

"A  Just after we stopped she said, *'Oh, no, a train'* and *that's all.*  (Italics mine)

"Q  And then as I understand it, just shortly after that the collision occurred?

"A  Yes."

There can be no question in reasonable minds but that at this grade crossing there had been placed bells and a red light warning signal that was operating prior to the driving of the automobile upon the tracks;

also, that the motor vehicle could have been stopped, if operated at a reasonable rate of speed, (and there is no evidence to the contrary) before reaching the tracks after the warning signals were given.

It is also clear from the plaintiff's evidence that the deceased was well-acquainted with this railroad crossing. It is equally clear from plaintiff's evidence that deceased did not warn the driver of the vehicle that the bells were ringing and the red light flashing, signaling the approach of a train. It is equally clear that the decedent was riding in the front seat of the automobile and in as good a position to see the flashing red lights and hear the ringing bells as the driver.

From these facts only two reasonable conclusions could be drawn, either the deceased did not maintain a lookout so as to see or hear the warning signals or the approaching train, or she did see and hear the warning signals and the approaching train and was willing to assume the risk of the driver getting the automobile safely across the tracks.

If one takes either conclusion, the deceased was contributorily negligent as a matter of law.

This court has consistently held that a guest in an automobile must exercise such care for his own safety as an ordinarily prudent person would under like circumstances. *Bailey v. Rhodes, Adm.*, 202 Or 511, 276 P2d 713; *Petersen v. Abrams and Leatham*, 188 Or 518, 216 P2d 664.

The majority seem to feel that this is a case where no duty was imposed upon the guest at a railroad crossing to maintain a lookout or to warn the driver, apparently because the driver was equally familiar with the fact that a railroad crossing existed. *Whiting v. Andrus*, 173 Or 133, 144 P2d 501.

While it is of course the general rule that a passenger in an automobile is not required to keep a constant lookout and in most circumstances no lookout at all, the rule is different on approaching railroad crossings which are notice to all the world of danger. In such circumstances, a duty is placed upon a passenger in an automobile approaching a railroad crossing to look and listen if he has an opportunity, and then if he fails to warn the driver he assumes the risk of injury.

In *Robison v. Oregon-Wash. R. & N. Co.*, 90 Or 490, 511, 176 P 594, the court stated:

"All this, however, does not excuse Robison from acting as a reasonably prudent man under the circumstances in looking out for his own safety. Although even a guest, as he neared the railway crossing it was his duty to look and listen according to his opportunity. If, with knowledge of the situation but without protest or warning he acquiesces in the negligence of the driver going into the danger by which he is injured, he adopts that negligence as his own. It is not imputed to him *nolens volens,* but on the other hand, he assumes it. The duty to look from where he can see and to listen from where he can hear is incumbent upon him as well as upon the driver where they have equal chance and if he does nothing to carry out this direction of the law he is negligent on his own account: White v. Portland Gas & Coke Co., 84 Or. 643 (165 Pac. 1005)."

Or as stated by other courts:

"Seiffert v. Hines, 108 Neb. 62, 187 N.W. 108, 109, is quite comparable to this case. There the rider was killed. Plaintiff was the administrator of his estate. There it was claimed that the negligence of the driver could not be imputed to plaintiff's intestate. There the deceased and the driver

were coemployees. There the deceased was familiar with the track in question. There the deceased had a clear opportunity of seeing the approaching train and a 'better opportunity' than the driver. These conditions exist in the instant case. We there held, applicable here, that: 'In this position, knowing that they were approaching the railroad crossing, it was his duty to look and listen for approaching trains. In this regard the same obligation rested upon him as though he were driving the car himself.'

"Moreland v. Chicago & N. W. R. Co., 117 Neb. 456, 220 N.W. 692, was a rider case. We there held: 'Where it is undisputed that a traveler on a highway failed to exercise reasonable precaution, by not looking at a reasonable point where he could have seen an approaching train, his negligence will defeat a recovery for a collision with a train at a crossing, even though no signal by the locomotive bell or whistle was given.'" *Neusbaum v. Chicago and Northwestern Railway Co.*, 162 Neb 754, 77 NW2d 299, 301.

"The proposed instruction is incomplete, in that it does not explain when a passenger would not be required to take any of the enumerated steps in order to avoid being contributorily negligent. Even when negligence of a driver may not be imputed to him, the passenger is bound to exercise ordinary care for his own safety. He may not shut his eyes to an obvious danger; he may not blindly rely on the driver in approaching a place of danger. He is normally bound to protest against actual negligence or recklessness of the driver, the extent of his duty in this regard depending upon the particular circumstances of each case and ordinarily being a question of fact for the jury. (Parker v. Southern Pacific Co., 204 Cal. 609, 615 [5], 269 P. 622; Miller v. Atchison, T. & S. F. Ry. Co., 166 Cal. App. 2d 160, 170 [6-8], 332 P.2d 746; Thomas v. Irvin, 96 Cal.App. 2d 816, 819 [1], 216 P.2d 476;

Martindale v. Atchison, T. & S.F. Ry. Co., supra, 89 Cal. App.2d 400, 409, 201 P2d 48).

"If the rider is aware that the driver is not looking for trains or is driving the vehicle in a negligent manner or is violating the law, or that an engine, car, or train is approaching on the tracks and is so close as to constitute an immediate hazard to those in the vehicle, he has the duty of doing whatever a person of ordinary prudence in the same situation would do to inform or warn the driver in an effort to prevent an accident. (Cf. Cate v. Fresno Traction Co., 213 Cal. 190, 201, 2 P2d 364.)" *Pobor v. Western Pacific Railroad Company,* 55 Cal2d 314, 359 P2d 474, 479.

"While the negligence of the driver is not to be imputed to the passenger, yet the passenger must exercise reasonable care for his own safety. He must look and listen and warn his driver if he sees a train approaching. The railroad track is to him, as to others, a signal of danger. Since he knew the crossing and its use and the condition of its approaches, more was required of him than of a stranger to the locality. He should have looked and listened where it would have been effective and this duty was commensurate with the character of the crossing as he knew it to be. Hancock v. Norfolk, etc., R. Co., 149 Va. 829, 141 S.E. 849; Norfolk etc., R. Co. v. Wellons, 155 Va. 218, 154 S.E. 575; Virginian R. Co. v. Rodgers, 170 Va. 581, 197 S.E. 476; Southern R. Co. v. Whetzel, 159 Va. 796, 167 S.E. 427; Virginian R. Co. v. Bacon, 156 Va. 337, 157 S.E. 789." *Butler v. Darden,* 189 Va. 459, 53 SE2d 146. See also, 4 Blashfield, Cyc. of Automobile Law and Practice (perm. ed.) Contributory Negligence of Guest, 624, § 2475.

While it is ordinarily a question of fact to be left to the jury as to whether a party is guilty of contributory negligence, it becomes a question of law when the only conclusion that can reasonably be drawn from undisputed fact is that of negligence.

As previously stated, the plaintiff's own evidence discloses that the lights and bells of the warning signals were operating and the train was visible at a point where there was ample opportunity (eight or nine blocks away) for the deceased to have noticed the train and informed the driver so that the automobile could have been stopped before being driven on the tracks.

Also, plaintiff's evidence discloses that decedent knew they were approaching a railroad crossing. Also, the evidence of plaintiff is that decedent did not maintain a lookout, since the driver of the car stated deceased said nothing until the car was upon the tracks and then said these significant words: "Oh, no, a train."

Therefore, if the majority would leave the question of the deceased's contributory negligence to a finding of fact by a jury, the majority must ignore the facts and rest their decision upon the presumption of due care. Then, if it could be properly assumed under the presumption that she did look and did see what was clearly visible, then, as stated by the courts, it became her duty to warn the driver. This clearly she did not do for the evidence of the plaintiff is that deceased said nothing until the car was stalled upon the tracks.

In my opinion, unless the majority are willing to overrule *Robison v. Oregon-Wash. R. & N. Co.*, supra, the deceased was clearly negligent as a matter of law.

But, even if one takes the view that the decedent was not contributorily negligent, and the doctrine of last clear chance has no application, the result is the same.

The majority apparently fail to understand the de-

cision in *Emmons v. Southern Pac. Co.*, 97 Or 263, 191 P 333, and without discussing the majority opinion cavalierly dismiss it as authority by the remark that the statements relied upon by the trial court "are made in the context of deciding the issue of last clear chance." That this conclusion is erroneous is disclosed by the opinion itself. Mr. Justice BURNETT, speaking for the court, opens the opinion with this statement, 97 Or 263, 271:

> "Apparently there was an attempt in the complaint to state a cause of action for negligence of the defendants, and another count for injury inflicted in violation of what is known as the last clear chance doctrine. No motion to require the plaintiff to elect between these two different phases in her pleading appears in the record."

and again on page 278:

> "Recurring to the *quasi*-double aspect of the case made by the complaint, *and considering the phase thereof in which negligence of the defendants is charged by the pleading and opposed by a counter-charge of contributory negligence,* it would seem that a strong case of contributory negligence was made out against the plaintiff. She admits seeing the train approaching, and that it was coming at a high rate of speed." (Italics mine)

Then in discussing the duty of the railroad in this context, the court stated, p. 279:

> "On the other hand, in the absence of knowledge to the contrary or some fact which ought to arouse his suspicion that this is not true, the man in charge of the train has a right to presume that anyone seen at a public crossing or elsewhere on the track is in possession of all of his senses, and that care for his own safety will induce him to use them, and then to act on the warnings conveyed through them: Union Pacific Co. v. Cappier, 66

Kan. 649 (72 Pac. 281, 69 L.R.A. 513, and notes and authorities at page 550 of the latter citation)."

The court then, on page 282, disposes of the charge of negligence and the counter charge of contributory negligence in these words:

"As to a question of negligence on one side and contributory negligence on the other, *the case is plain that the plaintiff's negligent management of the automobile contributed directly to her injury.* If, instead of loitering along at a slow rate of speed, she had driven across the track promptly, the collision would not have occurred. But it is manifest that she not only loitered on the way, but so managed her machine as to stop the engine at the point of greatest danger. Such faulty control of the vehicle on the part of the railway company would be the greatest negligence. The same rule applies to the other party." (Italics mine)

Not until the court had disposed of this issue did the court discuss the issue presented in the pleadings on the doctrine of last clear chance, stating on pages 282, 283:

"The only attack upon the evidence was a motion for a directed verdict. A disposal of this question is affected by two considerations: One is, that the result of a directed verdict is to conclude the controversy beyond recall; the other is, that there is an attempt in the complaint to ground the case not merely on the negligence of the defendants, but also on the doctrine of the last clear chance. We proceed at this point, then, to consider this doctrine."

Then on page 296 the court states:

"* * * It seems possible that the plaintiff may be able to amend her complaint so as to state a cause of action within the exception known as

the last clear chance doctrine, eliminating her previous contributory negligence. She ought to have the opportunity thus to amend. Whether she will be able to prove her case so newly stated, remains to be seen."

It is clear, therefore, that although the judgment for the plaintiff would have had to be reversed because the jury had returned a verdict against the railroad and not against the engineer, and a judgment would have had to be entered for the defendant, the court returned the case to the trial court solely for determination of the issues raised under the doctrine of last clear chance.

Again it appears to me the majority fail to understand the holding in *Marks, Exec. v. Southern Pac. Co. et al.*, 211 Or 539, 316 P2d 523. It is true that this cause was tried upon the doctrine of last clear chance. The issue there presented was whether the railroad was negligent after the peril of the deceased was discovered by the engineer. In this posture the negligence of the railroad in failing to stop its train in time to avoid injury of the plaintiff after discovery of the peril was the issue in question.

It does not seem to me that the duty of the railroad toward a person or automobile upon or near a railroad crossing could be any different when the railroad is charged with negligent failure to maintain a lookout and defends on the grounds of contributory negligence and when the plaintiff admits negligence and pleads its excuse under the doctrine of discovered peril.

Certainly the opinion of the majority makes no attempt to state why the railroad's duty toward a person or automobile on or near a railroad crossing would be different because of a plaintiff's theory of a right

of recovery. And the fact is that as to this duty the courts recognize no difference.

The doctrine of last clear chance, of course, does not apply until a defendant knows that an injured party is unable by reasonable care to avoid injury.

"The mere fact that the engineer sees a person on or dangerously near a railway track in front of his moving train does not require him to endeavor to stop the train, for he has a right to assume, in the absence of anything to indicate otherwise, that such person will get out of his dangerous position in time to avoid a collision and injury, and the doctrine of last clear chance is not called into operation." 44 Am Jur 727, Railroads § 487.

Also, without reference to the doctrine of last clear chance, 75 CJS 318, Railroads § 915, states the duty of the railroad with respect to persons or vehicles on or near a railroad crossing as follows:

"It is a well settled rule that, where the railroad employees in charge of a train see a person on or near the tracks in advance of the train, unless they know or can see from his conduct, from his condition, as considered infra § 917, or from the surrounding circumstances that he will not or cannot retire to a place of safety in time to prevent an accident, they have a right to presume that such person is in possession of his faculties, and that he will make a reasonable and proper use of his senses, and, where the proper alarm signal or warning, as by bell or whistle, is given to him of the approaching train, they have a right to act on the assumption that he will hear and heed the warning when given, and will retire to, or remain in, a place of safety in time to prevent injury from the approaching train of which he has knowledge or of which, by the ordinary use of his senses, he should have knowledge. Although these principles extend

to adults, such is not true in the case of a child of tender years, as considered infra § 916.

"The presumption, however, does not exist as an abstract proposition of law, but whether or not it prevails in any particular case depends on all the surrounding circumstances, and it does not apply, for example, where an operative sees that the pedestrian does not respond to a signal and sees others vainly trying to signal such pedestrian, or where an operative knows of men working on a viaduct where their means of apprehending the approach of the train are obscured, or where the signals are not believed to have been heard for any reason. It has been held that the train operatives are not authorized to presume that a person seen on the track will leave it in time to avert injury unless some warning is given. If acting in good faith and with reasonable prudence on such presumption the railroad employees delay using preventive efforts to avoid an injury until it is too late to do so, the railroad company will not be liable, unless their own negligence, as in running at an unlawful rate of speed, precludes them from acting on such presumption."

The majority seem to rely quite heavily upon *Sheard v. Oregon Elec. Ry. Co.*, 131 Or 415, 282 P 542, *Fish v. Southern Pacific Co.*, 173 Or 294, 143 P2d 917, 145 P2d 991, and *Finn v. Spokane P. & S. Ry. Co.*, 189 Or 126, 214 P2d 354, 218 P2d 720.

These cases are clearly distinguishable and cannot control the general duty of railroads under the facts of the present case.

The *Sheard* case involved the question of a dangerous crossing and the knowledge of this fact by the railway company. The facts upon which plaintiff stated his cause of action are set out on page 417 as follows:

"* * * That the stone block paving on de-

fendant's easterly track from the point where it leaves the west side of Hood street northerly for more than 60 feet, the stone block paving is in a loose worn, unsafe and dangerous condition to automobile traffic on Hood street, and that during all of the times mentioned in the complaint there was a worn groove on the inside of the rails about three inches wide and three inches deep next to the rail sufficient to allow the wheel of an automobile to be caught therein. * * *"

There was evidence in that case that these facts were known to the defendant. That case clearly falls within the exception to the general rule as stated in the *Emmons* case, "in the absence of knowledge * * * of some fact" then the presumption arises that the party in danger will remove himself to a place of safety.

*Fish v. Southern Pacific Co.*, supra, also deals with a dangerous crossing and the decision, therefore, deals only with the plaintiff's contributory negligence.

In *Finn et al v. Spokane P. & S. Ry. Co.*, supra, (also a dangerous crossing case) the quotation of the majority is used in connection with the duty of the railroad to have a flagman or signal to warn travelers on the highway that the highway was blocked by its stopped train, not with the duty to use due care toward one on or near a railroad crossing.

It, therefore, seems clear to me that unless the majority are willing to overrule the *Emmons* and *Marks* cases by devising another rule as to the duties of railroads, the judgment of the trial court, based upon the present rule, should be affirmed.

I, therefore, dissent.

McALLISTER, C. J., joins in this dissent.