[Sac. No. 7191. In Bank. Feb. 9, 1961.]

MILDRED S. POBOR et al., Appellants, v. THE WESTERN PACIFIC RAILROAD COMPANY (a Corporation), Respondent.

Thomas W. Loris for Appellants.

Johnson, Davies & Greve and Burton Mason for Respondent.

McCOMB, J.—Plaintiffs appeal from a judgment in favor of defendant after trial before a jury in an action to recover damages for wrongful death.

Viewed in the light most favorable to defendant (respondent), the record discloses: About 5 a. m. on April 30, 1955, an automobile operated by Michael Pobor, father of plaintiff Peter Michael Pobor and husband of plaintiff Mildred S. Pobor, while traveling at a speed of 40 to 50 miles per hour along D Street in the city of Sacramento, at a point running through the business and residential areas, approached the tracks of defendant running north and south between 19th and 20th Streets. Mr. Pobor, ignoring a reflectorized advance railroad warning sign, two large white RxR's painted on D Street about 200 feet in advance of the crossing, and double white lines parallel to and in advance of the tracks, and in complete disregard of two Public Utilities Commission No. 1 crossing signs, a silver and orange colored engine of defendant, the large headlight of the engine, the running lights of the engine, and two blasts of the whistle, so operated the automobile that it crashed into the train at this crossing, making no attempt to stop, swerve, or otherwise avoid the accident. As a result, Mr. Pobor was killed and his brother-in-law, Mr. Dragash, who was riding with him, was injured severely, with a resultant loss of memory. There was evidence that the coroner's inquest determined that Mr. Pobor was drunk at the time of the accident.

■ *Questions:* First. *Did the trial court commit prejudicial error in instructing the jury, at the request of defendants:*

(a) *In accordance with the provisions of section 670, subdivision (a), of the Vehicle Code,[1] as in effect at the time of the accident, that is, that no person should operate on any highway any motor vehicle unless such motor vehicle was equipped with brakes adequate to bring such motor vehicle to a complete stop when operated on dry asphalt, etc., followed*

[1] As numbered prior to the 1959 recodification.

*by a table showing the stopping distances for 10, 15, and 20 miles per hour?*

*No.* Plaintiffs may not predicate error upon the giving of the questioned instruction, for the reason that plaintiffs' counsel, during his argument to the jury at the close of the case, read to the jury the text of section 670, subdivision (a), of the Vehicle Code as in effect at the time of the accident, together with the stopping distances at various speeds as set forth in that section. Subsequently, at the request of defendant, the trial court gave to the jury the questioned instruction.

The questioned instruction under no circumstances could have misled the jury to the prejudice of plaintiffs, since the same information was before the jury by reason of the statement of plaintiffs' counsel. The trial court's instruction embodying the language of section 670, subdivision (a), of the Vehicle Code was, therefore, mere repetition.

It is settled that a party may not complain of error which he has himself invited. (*Lynch* v. *Birdwell,* 44 Cal.2d 839, 846 [2, 3] [285 P.2d 919] ; *People* v. *Wayne,* 41 Cal.2d 814, 831 [25] [264 P.2d 547] ; *Jackson* v. *Superior Court,* 10 Cal.2d 350, 358 [6] [74 P.2d 243, 113 A.L.R. 1422] ; *Newman* v. *Los Angeles Transit Lines,* 120 Cal.App.2d 685, 695 [23] [262 P.2d 95].) Likewise, there was no statement or suggestion by the trial judge that the brakes were defective or that failure to comply with section 670, subdivision (a), was negligence *per se.*

(b) "*The People of the State of California have established the Public Utilities Commission by the Constitution of this state.*

"*The Public Utility Commission has been given by Public Utility Code Section 1202, the exclusive power*

*a. to determine and prescribe the manner including the particular point of crossing, and the terms of installation, operation, maintenance, use and protection of . . . each crossing of a public or publicly used road or highway by a railroad or street railroad, and of a street by a railroad, or vice versa, . . . P.U.C. Section 1202*"?

*No.* Plaintiffs contend that the trial court instructed the jury that defendant was exercising due care at the time of the accident. The instruction questioned did not so instruct the jury, nor did any other instruction given by the trial court.

The trial court properly instructed the jury on the

effect of orders of the Public Utilities Commission with respect to safeguards to be maintained at crossings such as the one involved in this case. It instructed the jury that the Public Utilities Commission had been given the power to determine and prescribe protective measures to be taken at each crossing of a public street and railroad crossing; that presumably the commission had performed its duties and had determined the protection required at D Street; that in this regard there was also a presumption that defendant had performed its duty by installing such protective devices and appliances as had been prescribed by the commission; that it is the duty of a railroad company to exercise reasonable care in the warning and for the safety of travelers on a public street that crosses its tracks; that this duty is not necessarily fulfilled by complying with those regulations issued by the commission; that such regulations prescribe only the minimum measure of care that would satisfy the commission and the law; that whether or not compliance with such regulations, if there was such compliance, amounted to reasonable care was a question that the jury must decide according to the following principle, namely, any measures that would have been taken by reasonably prudent railroad management to protect travelers on the street in question and at the time in question from the dangers of the crossing were the measures required of defendant; that compliance with those regulations did not relieve defendant or its employees from exercising ordinary care in the operation of its locomotive and the maintenance of the crossing; that if a reasonable person would have supplied a flagman, wigwag or automatic warning device at this crossing, defendant was guilty of negligence; and that if defendant complied with section 7604 of the Public Utilities Code on sounding a warning, it "still had the duty to exercise the care of a reasonably prudent person in the circumstances of operating its train." (See *Lloyd* v. *Southern Pacific Co.*, 111 Cal.App.2d 626, 637-638 [245 P.2d 583].)

The questioned instruction was not an instruction that defendant was presumed to have been exercising due care in the operation of its train or in the protection maintained at the crossing.

*Dragash* v. *Western Pacific Railroad Co.*, 161 Cal.App.2d 233, 241 [326 P.2d 649], and *Stout* v. *Southern Pacific Co.*, 127 Cal.App.2d 491, 496 et seq. [274 P.2d .194], relied on by plaintiffs, are not applicable to the facts of the present case. In those cases the court was dealing with a situation where an

instruction was given expressly stating that the railroad was presumed to have been exercising due care at the time of the accident in question. No such instruction was given in the instant case.

█ (c) *"The duty rests upon the driver of an automobile to use ordinary care to avoid colliding with visible objects in front of him, and an especial duty of care rests upon him in approaching and crossing railroad tracks"?*

*No.* This instruction was a correct statement of the law. (*Martindale* v. *Atchison, T. & S.F. Ry. Co.,* 89 Cal.App.2d 400, 414 [14a] et seq. [201 P.2d 48] ; *Heintz* v. *Southern Pacific Co.,* 63 Cal.App.2d 699, 704 [1] [147 P.2d 621] ; *cf. Conner* v. *Southern Pacific Co.,* 38 Cal.2d 633, 638 [8] [241 P.2d 535].)

█ (d) *On unavoidable accident?*

*No.* Although under *Butigan* v. *Yellow Cab Co.,* 49 Cal.2d 652 [320 P.2d 500, 65 A.L.R.2d 1], it is error to give an instruction upon unavoidable accident, still it is a question for the appellate court to determine whether the giving of the instruction constituted prejudicial error. (*Butigan* v. *Yellow Cab Co., supra,* p. 660 [10].)

In the present case an examination of the record, which discloses the facts set forth above, indicates that the giving of the instruction could not have influenced the jury in any respect. Therefore, the giving of the instruction did not constitute prejudicial error under article VI, section 4½, of the Constitution.

█ Second. *Did the trial court err in refusing to instruct the jury, at plaintiffs' request:*

(a) *". . . where proof has been made that a particular person is the registered owner of an automobile which is involved in an accident, a rebuttable presumption or inference arises, that at the time of the accident, the automobile was in such owner's possession and was being operated by the registered owner"?*

*No.* The correct rule in California is stated thus by Mr. Justice Schauer in *People* v. *Forbath,* 5 Cal.App.2d Supp. 767, 773 [42 P.2d 108] : "Evidence of the mere fact that an automobile is registered in the name of a person does not constitute *prima facie* proof, in a criminal case arising out of the illegal operation of the car, that the registered owner was the operator on such occasion, that he had knowledge of, aided or abetted in, or consented to, the same." The same rule is applicable to civil cases.

*Stoneburner v. Theodoratos,* *(Cal.App.) 30 P.2d 1001, and *Boellaard* v. *Crabbe,* 41 Cal.App.2d 792 [107 P.2d 951], relied on by plaintiffs, do not hold a contrary rule. These cases merely hold that where there is conflicting evidence presented as to who was driving, it is for the jury to determine the question.

 (b) *On the statutory definition of who is the driver, as well as the statutory definition of who is the registered owner, of a vehicle?*

*No.* There was no issue on registration or ownership of the automobile. Jurors know what is meant by the term ''driver of an automobile'' and the term ''registered owner of an automobile'' without the court's having to define those terms.

 Since jurors are presumed to possess ordinary intelligence and to be capable of understanding the meaning and use of words in their common and ordinary application, the trial judge is not required to define simple words and phrases employed in an instruction. (48 Cal.Jur.2d (1959), Trial, § 181, p. 209.)

 (c) *In regard to defendant's compliance with statutory regulations of the Public Utilities Commission?*

*No.* Plaintiffs' proposed instruction No. 34 was to the effect that if the jury found from the evidence that defendant gave the warning required by section 7604 of the Public Utilities Code, ''it does not necessarily follow, that merely because it has complied with the terms of the statute, that it is thereby absolved from negligence. It may or may not yet have exercised the degree of care which was required under all the circumstances of this particular case.'' The trial court struck out the quoted portion of the proposed instruction, because it was repetitious of language contained in the court's instruction X.

It is apparent from the given instructions referred to in the answer to paragraph (b) of Question First that the trial court properly instructed on the effect of compliance with the statute. In fact, it not only instructed the jury in almost the identical words of plaintiffs' proposed instruction No. 34, but went further and gave an instruction to the effect that compliance, if any there was, with said code section constituted only minimum care. This instruction as given by the trial court was far more favorable to plaintiffs than the instruction

---

*A rehearing was granted on April 20, 1934; the appeal was dismissed on stipulation on May 7, 1934.

proposed by them. (See *Luis* v. *Cavin*, 88 Cal.App.2d 107, 115 [7] et seq. [198 P.2d 563].)

(d) *"A rider of an automobile is not necessarily contributorily negligent because he does not request the driver to stop before attempting to cross a railroad crossing, or call it to the latter's attention, or because he does not interfere with the operation of the automobile at such crossing . . ."?*

*No.* The proposed instruction is incomplete, in that it does not explain when a passenger would not be required to take any of the enumerated steps in order to avoid being contributorily negligent. Even when negligence of a driver may not be imputed to him, the passenger is bound to exercise ordinary care for his own safety. He may not shut his eyes to an obvious danger; he may not blindly rely on the driver in approaching a place of danger. He is normally bound to protest against actual negligence or recklessness of the driver, the extent of his duty in this regard depending upon the particular circumstances of each case and ordinarily being a question of fact for the jury. (*Parker* v. *Southern Pacific Co.*, 204 Cal. 609, 615 [5] [269 P. 622]; *Miller* v. *Atchison, T. & S.F. Ry. Co.*, 166 Cal.App.2d 160, 170 [6-8] [332 P.2d 746]; *Thomas* v. *Irvin*, 96 Cal.App.2d 816, 819 [1] [216 P.2d 476]; *Martindale* v. *Atchison, T. & S.F. Ry. Co.*, supra, 89 Cal.App. 2d 400, 409.)

If the rider is aware that the driver is not looking for trains or is driving the vehicle in a negligent manner or is violating the law, or that an engine, car, or train is approaching on the tracks and is so close as to constitute an immediate hazard to those in the vehicle, he has the duty of doing whatever a person of ordinary prudence in the same situation would do to inform or warn the driver in an effort to prevent an accident. (*Cf. Cate* v. *Fresno Traction Co.*, 213 Cal. 190, 201 [2 P.2d 364].)

It is only when the passenger is unaware that the driver is carelessly rushing into danger that there is not at least a question of fact as to his duty to protest. (*Thompson* v. *Los Angeles etc. Ry. Co.*, 165 Cal. 748, 753 [134 P. 709]; *Gadbury* v. *Ray*, 171 Cal.App.2d 150, 155 [3] [340 P.2d 66].) Without this qualification, the proposed instruction was incomplete and could have misled the jury.

It is not error for a trial court to refuse a proposed instruction which is incomplete or misleading. (*Hardin* v. *San Jose City Lines, Inc.*, 41 Cal.2d 432, 435 [1], [260 P.2d 63]; *Davis* v. *Johnson*, 128 Cal.App.2d 466, 473 [5] [275 P.2d

563] ; *Bertolozzi* v. *Progressive Concrete Co.,* 95 Cal.App.2d 332, 337 [7] [212 P.2d 910] ; *Jaeger* v. *Chapman,* 95 Cal.App. 2d 520, 525 [3] [213 P.2d 404] ; *Jones* v. *Bayley,* 49 Cal. App.2d 647, 656 [6] [122 P.2d 293].)

In *Hardin* v. *San Jose City Lines, Inc., supra,* 41 Cal.2d 432, in dealing with an analogous situation, Chief Justice Gibson, at page 435 [1], said: "The first sentence of the instruction erroneously assumes that an accident occurred in the manner claimed by plaintiff. As we have seen, there was evidence from which it might be reasonably inferred that no accident in fact occurred and that plaintiff's injuries were the result of having been struck by a person with whom plaintiff was acquainted. In these circumstances the instruction should have been prefaced by language such as 'If, and only in the event, you should find that there was an accidental occurrence as claimed by plaintiff. . . .' (*Cf. Black* v. *Partridge,* 115 Cal.App.2d 639, 650 [252 P.2d 760] ; see *Freitas* v. *Peerless Stages, Inc.,* 108 Cal.App.2d 749, 757 [239 P.2d 671] ; California Jury Instructions, Civil [B.A.J.I.] No. 206, as compared with No. 206-B.)"

In *Boots* v. *Potter,* 122 Cal.App.2d 927, 937 [7] [266 P.2d 176, 39 A.L.R.2d 1], the court considered an instruction to the effect that if the plaintiff's conduct was found to be excusable, justifiable, and such as might reasonably have been expected from a person of ordinary prudence, he was not guilty of contributory negligence even though he violated a statute. It was there held that the refusal to grant such an instruction was proper, since it gave no indication of the basis upon which a reasonably prudent man might be justified in failing to obey the statute. The same principle is involved here.

In the present case the trial court instructed the jury that negligence is the doing of an act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, activated by those considerations which ordinarily regulate the conduct of human affairs; that contributory negligence, if it existed, would be negligence on the part of Mr. Pobor which contributed as a proximate cause to his death; that the jury should determine what conduct might reasonably have been expected of a person of ordinary prudence in the same circumstances; that if Mr. Dragash was the driver of the automobile, his negligence, if any, could not be imputed to Mr. Pobor, and it would not bar a recovery by Mr. Pobor's heirs;

that Mr. Pobor should be found not guilty of contributory negligence unless the jury found personal negligence on his part which proximately contributed to his death; that the only obligation of a rider who has no control or management of the automobile is to exercise ordinary care for his own safety and take such steps to protect himself as a man of ordinary prudence would take under the same circumstances; that Mr. Pobor was presumed to have been exercising ordinary care at the time of the accident and obeying the law; that contributory negligence was an affirmative defense which defendant had the burden to prove by a preponderance of the evidence; that defendant also had the burden to prove by a preponderance of the evidence that any contributory negligence proximately contributed to his death; and that if defendant did not so prove, the jury must find against such defense. The jury was fully and fairly instructed.

(e) *"A fact that the defendant, Western Pacific Railroad Company, has been granted the right to lay tracks and to operate trains across the street, does not give it the exclusive right to travel over that portion of the street covered by its tracks"?*

*No.* The trial court in fact did instruct the jury on this very subject, as follows: "The streets of the city such as the place of the accident here involved, are for the use of the travelling public, and the right of the defendant railway company is to use it *in common with the public."* (Italics added.)

Third. *Did the trial court err in sustaining an objection to a hypothetical question asked the so-called expert witness, Roger Greene?*

*No.* Plaintiffs sought to have Roger Greene give an opinion as an expert as to who was driving the automobile at the time of the accident. Defendant objected to the question on the ground that Mr. Greene had not been qualified as an expert.

It is for the trial court to determine, in the exercise of a sound discretion, the competency and qualification of an expert witness to give his opinion on evidence, and its ruling will not be disturbed on appeal unless a manifest abuse of that discretion is shown. (*Trust* v. *Arden Farms Co.,* 50 Cal.2d 217, 224 [13, 14] [324 P.2d 583]; *Huffman* v. *Lindquist,* 37 Cal.2d 465, 476 [10] [234 P.2d 34, 29 A.L.R.2d 485]; *Sinz* v. *Owens,* 33 Cal.2d 749, 755 [6] [205 P.2d 3, 8 A.L.R.2d 757]; *Oakes* v. *Chapman,* 158 Cal.App.2d 78, 82 [2] [322 P.2d 241].)

Applying the foregoing rule to the facts of the

present case, it appears that Mr. Greene was not a qualified expert, since there was no evidence in the record showing that he had any special skill or training which would enable him to speak with authority on the facts and conclusions to be drawn from the question asked him, that is, who was the driver of the automobile at the time of the accident. He testified that he was employed by the state as a chemist and ballistics man; that his college degree was in chemistry; that on occasions he had examined specimens such as blood, hair, and fabric from clothes that officers had brought into the laboratory; and that he had been requested on some occasions to try to determine who was where in an automobile that was involved in a serious accident.

Mr. Greene further testified that the only examination made by him in the present case was that he looked at the automobile and saw that the right side from the front bumper back was demolished, the right sun visor was broken, and there was a bump in the molding over the right side of the windshield; that he saw a thin outer layer of skin one inch wide by three inches long on the fabric by the bump; that there was no blood or human hair by the skin; and that these were the only findings that he made.

It is clear that the trial judge's ruling was fully supported by the evidence. Mr. Greene was not qualified as an expert to give an expert opinion on the subject relative to which he was being questioned. (See *Oakes* v. *Chapman, supra,* 158 Cal.App.2d 78, 82 [2] et seq.)

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., White, J., and Dooling, J., concurred.