[Civ. No. 32650.   Second Dist., Div. One.   Feb. 24, 1969.]

STEVEN B. WIGODSKY, Plaintiff and Respondent, v. SOUTHERN PACIFIC COMPANY et al., Defendants and Appellants.

52

, Griffith & Thornburgh and F. Brian Rapp for Defendants and Appellants.

Dryden, Harrington & Swartz and Vernon G. Foster for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment in an action for personal injuries.

Plaintiff brought the action for injuries received when a train of defendant collided with a stalled tanker truck on which plaintiff was working. Some of the facts as developed by the testimony are as follows: on the morning of December 15, 1964, plaintiff and Cullis Rogers were employees of the Stevlin Company, a landscaping contractor engaged in spraying, or in preparing to spray a weed control solution along one of the roads on the Vandenberg Air Force Base. The defendant operated trains on its tracks which at the point in question ran in a general north-south direction, and the road at the point in question runs in a general east-west direction. The tracks in the vicinity of the accident were a segment of an infrequently used spur track off and from a more frequently travelled section of tracks and at the time of the accident were rusty. The only signs (or signal) designating the area as a railroad crossing were the wooden "cross buck" signs. Plaintiff at and immediately before the time of the accident was engaged as a helper on the "tanker truck." The truck outfit was equipped with a tank which held about 3,500 gallons of a solution of an oil and water mixture which was being used to spray the ground near the road in a seeding operation. The spraying apparatus was located at the rear of the tank and was operated by a man from a platform located some 3 or 4 feet from the ground or roadway, extending across the width of the tank and extending about 2 feet behind the tank. The platform consisted of a steel rack across

which was placed a steel mat or mesh on which the spray operator stood. The platform was oval shaped and had a rail or bannister around it.

Attempts had been made earlier in the day to operate the spray device but because of a stiff wind blowing from west to east the solution would blow back toward the truck. The truck was stopped about 50 feet to the west of the railroad crossing where there was a discussion between plaintiff and Rogers (the truck driver) with reference to the spraying operation. It was decided that the truck should be driven east across the railroad tracks, then should turn around and proceed in a westerly direction so that the wind would blow the spray solution behind the truck rather than into it. Rogers started the truck engine and drove to a point west of the railroad tracks where he brought the truck to a stop to observe whether a train was coming. Plaintiff was on the platform at the left rear corner of the tank. Rogers looked in both directions and did not see any approaching train or hear the sound of any train bell or whistle. The road was rough at the crossing because of some excavations which had been made to receive some timbers. Rogers started to drive the vehicle across the railroad tracks and as the front end of the vehicle-outfit crossed the tracks the vehicle engine started to sputter and then stopped running. Rogers tried unsuccessfully to restart the vehicle engine and then "let out on the clutch and . . . tried to pull it with the starter, . . ." He succeeded in getting the truck to the point where all of the wheels were to the east of the tracks, but the rear portion of the tank and platform were projecting over a part of the tracks. Rogers estimated that the time consumed in his efforts to restart the engine and to move the truck from the tracks was about four minutes. During the entire time from the occasion when the front wheels reached the tracks until he came to a complete stop beyond the tracks Rogers was either attempting to start the engine in the truck or to move the vehicle outfit by means of the clutch and starter.

An approaching train going from south to north was operated by engineer Ivan Burger. Burger died before the trial from causes unconnected with the collision but his deposition was read to the jury. Burger stated that the train consisting of a diesel engine, a caboose and two cars was travelling at a speed of about 30 miles per hour, that the speed of the train was not governed by regulation but by the discretion of the engineer, that he passed a whistle post about a quarter of a

mile from the intersection crossing at a time when he was separated from the intersection crossing by a curve. He further stated that when he reached a point about 100 yards from the intersection crossing he saw the truck in its stalled position and although he was unsure as to whether the truck cleared the tracks he continued on at a speed of 30 miles per hour until the engine of the train was about 50 feet from the truck at which time he sounded a horn and started to apply the brakes. At the time of the impact the train was still traveling at about 30 miles per hour. There was evidence to the effect that the brakes first made effective or substantial contact about 52 feet beyond the point of impact.

Rogers testified that when he first heard the whistle of the train he made one last effort to move the vehicle outfit with the starter but the truck came to a complete stop. He further testified that a total of two or three seconds elapsed between the first and second sounding of the train whistle. Rogers then called to plaintiff, ''A train is coming.'' jumped from the cab of the truck and started to run toward the side of the road where he tripped and fell over some lumber. Rogers did not look to see where plaintiff was during this period of time. His estimate was that five seconds elapsed between the first sounding of the train whistle and the impact of the train with the rear end of the tank and platform of the truck. The impact knocked the train about 10 to 15 feet to the west of the tracks. Immediately after the collision Rogers looked for plaintiff and found him behind the truck and about 10 to 15 feet away, lying in a pool of oil and water bleeding profusely and apparently unconscious.

The accident was investigated by air force investigators one of whom testified that upon arrival at the scene he found all of the railroad cars north of the crossing with the front of the engine 348 feet from the crossing. Upon examining the ''cross buck'' sign to the east of the crossing he found a chip removed from it and blood on the sign indicating that plaintiff had struck the sign.

Plaintiff testified that he had no recollection after the truck stopped at the point about 50 feet west of the tracks where he and Rogers had their discussion as to what they would do. His next conscious recollection was after the accident lying on the ground covered with the solution from the tank.

The undisputed evidence is to the effect that the accident occurred on an infrequently used spur track and there is no evidence that plaintiff should have been put on notice before

the truck started across the tracks that the truck would or might stall on the tracks. A view of the tracks from the direction in which the train was approaching was limited to about 300 feet and there is no evidence to support an inference that either Rogers or plaintiff was aware that a train would be approaching that crossing at that time.

The defendant in its pleading alleges that plaintiff was guilty of contributory negligence. Defendant requested that the jury be instructed with reference to contributory negligence (BAJI 103.1 [rev.] and 113). The judge after hearing all of the evidence and testimony, concluded that there was no substantial evidence to support the defense of contributory negligence, withdrew the issue from the jury and denied the request to give the indicated instructions. The jury returned a verdict in favor of Wigodsky and against Southern Pacific Company. There was also involved in the action the claim of an intervener for workman's compensation payments, however the judgment with reference to that matter is final and we are not concerned with that phase of the case.

█ Appellant now makes the contention that it was prejudicial error to refuse to give the contributory negligence instructions. It makes no contention with reference to the negligence of the engineer of its train or with reference to the extent of plaintiff's injuries.

█ What is stated in *Bardin* v. *Case*, 99 Cal.App.2d 137, 142 [221 P.2d 292] is particularly appropriate here: "There is no question here as to the principles to be applied. Contributory negligence, like negligence, is a question of fact for the jury, except where the trial court can hold as a matter of law that only one inference can be rationally drawn from the evidence. [Citations.] The question presented to us is whether, under the evidence, any inference of contributory negligence can rationally be drawn. We are of the view that the record presents no substantial evidence to warrant such an inference. The possibility of such negligence may be conceded, but that is not sufficient. █ An inference of fact must be based upon *substantial* evidence, not conjecture. █ 'In order to justify the submission of any question of fact to a jury, the proof must be sufficient to raise more than a mere conjecture or surmise that the fact is as alleged. It must be such that a rational, well-constructed mind can reasonably draw from it the conclusion that the fact exists, and when the evidence is not sufficient to draw such inference, the court

should refuse to submit the question to the jury.' [Citation.]" '

Also in *Van Pelt* v. *Carte,* 209 Cal.App.2d 764, 769 [26 Cal.Rptr. 182] it is correctly set forth: ". . . it must be remembered that the burden of proof on defendant's defense of contributory negligence rests on the defendant, not the plaintiff.

"As was said in *Gadbury* v. *Ray,* 171 Cal.App.2d 150, 155 [340 P.2d 66], 'The burden of showing contributory negligence of the guest is upon the driver of the car by whose negligence he is injured and in the absence of any showing to that effect the plaintiff in a death or loss of memory case may rely upon the presumption that the guest exercised due care for his own safety, in which event an instruction on contributory negligence should not be given.'

"Unless contributory negligence appears from plaintiff's own evidence, defendant must plead and prove it. [Citation.] "Conjecture, surmise and guesswork may not give rise to an affirmative finding of fact."

In *Klein* v. *Southern Pac. Co.,* 203 Cal.App.2d 72 [21 Cal. Rptr. 233], the plaintiff, a passenger in a vehicle, was struck by a train at a grade crossing. Judgment went in favor of defendant in the trial court following the giving of an instruction on contributory negligence. The evidence demonstrated that the engineer of the train was negligent and also that there was contributory negligence upon the part of the driver of the automobile in which appellants were riding. Appellants had no independent recollection of the accident or any of the circumstances preceding it and consequently were unable to testify to any events bearing on the accident. In reversing a judgment for defendant railroad upon the ground that it was prejudicial error to instruct the jury on contributory negligence the court stated (p. 79) : "In the instant case, the only possible fact would be knowledge that the automobile was approaching the railroad track. The mere fact that an automobile is approaching a railroad track does not place a burden on a guest passenger to ascertain whether or not a train is approaching. As stated in *Marchetti* v. *Southern Pac. Co.,* 204 Cal. 679, 682-683 [269 P. 529] : 'A passenger in a motor vehicle approaching a railway crossing is under no legal obligation to warn the driver, either of the presence of the tracks or of an apporaching train, the view being unobstructed and the driver reasonably competent and vigilant. . . . The passenger has a right to suppose that the driver, on approaching a railway

crossing with which he is familiar, will exercise due care for the protection and safety of his passengers, and that even when so near the crossing as to be in apparent danger of collision with an oncoming train he will or may take some action which will avert an accident.' [Citation.]''

In *Johnson* v. *Duvall,* 215 Cal.App.2d 122, 125 [30 Cal. Rptr. 106], quoting from *Van Pelt, supra,* at page 125 the court said: ''. . . The plaintiff had no recollection of looking for traffic at the intersection stop. Appealing from a defense verdict and judgment, the plaintiff contended that it was prejudicial error for the trial court to have given instructions on contributory negligence because there was no evidence of such on her part. The defendant contended that the plaintiff was obligated to call the driver's attention to the imminent danger or to  protest at moving forward into the highway. The court said (p. 768) : 'The rule of law defining a guest's duty to observe traffic is concisely stated in *Robinson* v. *Cable,* 55 Cal.2d 425, 427 [11 Cal.Rptr. 377, 359 P.2d 929], as follows: ''In the absence of some fact brought to his attention which would cause a person of ordinary prudence to act otherwise, a person riding in an automobile is not charged with the responsibility of observing the condition of the traffic on the highway, and his mere failure to do so, without more, will not support a finding of contributory negligence.''

'' 'In *Pobor* v. *Western Pac. R. R. Co.,* 55 Cal.2d 314, 324 [11 Cal.Rptr. 106, 359 P.2d 474] the same rule is stated in different words.

'' 'From the foregoing it is clear that if, from the evidence, the jury could legitimately draw some inference showing that contributory negligence on the part of plaintiff proximately contributed to the causation of the accident and injuries complained of, the giving of the instruction on contributory negligence is proper and the question becomes one of fact for the jury. If the evidence does not admit of any such inference the giving of the instruction is error.' ''

There is unlimited room for speculation and conjecture in this case as to exactly what occurred but there is no substantial evidence that respondent failed to exercise reasonable care for his own safety under the circumstances. There is no evidence of what respondent did or did not do from the time the truck became stalled on the tracks.

We are persuaded that the cases cited and relied upon by appellant, namely *Miller* v. *Western Pac. R.R. Co.,* 207 Cal. App.2d 581 [24 Cal.Rptr. 785] ; *Coe* v. *Southern Pac. Co.,*

203 Cal.App.2d 509 [21 Cal.Rptr. 731]; *Pobor* v. *Western Pac. R.R. Co.*, 55 Cal.2d 314 [11 Cal.Rptr. 106, 359 P.2d 474]; and *Spataro* v. *Southern Pac. Co.*, 254 Cal.App.2d 778 [62 Cal.Rptr. 621] are distinguishable. The facts in each of the cases relied upon are far from the facts of the case at bench.

We are convinced that the trial judge acted properly under the circumstances.

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied March 20, 1969.